United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIEZER SALCEDO,<br><br>    Petitioner,<br><br>  v.<br><br>F. B. HAWS, Warden,<br><br>    Respondent.<br>_____/ | No. C 07-5513 MHP (pr)<br><br>**ORDER DENYING PETITION FOR**<br>**WRIT OF HABEAS CORPUS** |

## INTRODUCTION

This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. § 2254 in which Eliezer Salcedo challenges the constitutional validity of his convictions. For the reasons set forth below, the petition will be denied.

## BACKGROUND

In 2001, Salcedo and another man drove up to a group of persons and fired multiple gunshots at them, one person dying as a result. After a trial on charges arising from this incident, a San Francisco Superior Court jury found Salcedo guilty of four counts of attempted murder (Cal. Pen. Code §§ 187/664), and one count of second degree murder (id. § 187).[1] The trial court sentenced Salcedo to a determinate term of twenty-eight years to be followed by an indeterminate term of forty years to life in state prison. Salcedo appealed. The California Court of Appeal for the First Appellate District affirmed the judgment. Ans., Ex. 3 (People v. Salcedo, No. A109634, 2006 WL 2790551 (Cal. Ct. App. Sept. 29, 2006)) at 1. The California Supreme Court denied his petition for review. Id., Ex. 5.

The facts of the offenses are as follows:

> Robert Martinez (Robert) and his sister Leticia Ramirez (Leticia) lived in a pair of flats at 1161/1163 York Street. At approximately 3:00 a.m., Saturday, April 28, 2001, they and their friends Barbie Ledesma (Barbie), Veronica Martinez (Veronica), and Pablo Ojeda (Pablo) were sitting and/or standing on the stoop or front sidewalk of the York Street residence, talking, drinking and listening to music. A burgundy Honda with lightly tinted windows pulled into a driveway two houses to the right of 1161/1163 York Street, then backed out of the driveway into the street, where it stopped with its engine running. Because he thought it belonged to a friend who had similar-looking car, Robert, carrying a red cup with a drink in one hand, walked toward the Honda, nodded his head in greeting, and may have said, "'What's up?' "[Salcedo] got out of the passenger door. He was carrying a black pistol. Robert saw a flash, heard a fireworks-like sound, and ran toward his companions, yelling at them to get down. He heard more gunshots as his companions scattered. He covered his sister on the ground, and when he looked back toward the burgundy Honda, he saw [Salcedo] and the Honda's driver standing on either side of the rear of the Honda with their hands in a forward position. They were at the midpoint of the street, approximately 15 feet from the curb. The shooting stopped when the burgundy Honda departed . . . Letitia died from a single bullet wound to the forehead . . . Robert and his other companions were not injured.

Ans., Ex. 3 at 2–3.

As grounds for federal habeas relief, Salcedo alleges that (1) his right to due process was violated because the evidence of intent to kill was insufficient to support the convictions for the attempted murders of Pablo Ojeda, Veronica Martinez, and Barbie Sanchez, and (2) the jury instruction on the intent to kill was erroneous and violated his right to due process.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over the petition for writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged convictions occurred in San Francisco County, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the

highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. 28 U.S.C. § 2254(b), (c). State judicial remedies have been exhausted for the claims presented in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

3

**DISCUSSION**

**I.   Sufficiency of Evidence**

Salcedo claims that his right to due process was violated because the evidence was insufficient to support the convictions for the attempted murders of Pablo Ojeda, Veronica Martinez, and Barbie Sanchez in that there was insufficient evidence of intent to kill based on a "kill zone" theory of criminal liability. Pet., P. & A. at 1. The state appellate court rejected this claim, finding that there was "substantial evidence from which to find [Salcedo] had the intent to kill Pablo, Barbie, and Veronica," even though the intended victim was Robert. The state appellate court found that Salcedo had created a "kill zone" by firing "numerous shots from a semi-automatic weapon in the direction of a small group of unarmed men and women who were socializing in close proximity in a locale from which there was no ready escape, and he continued shooting after the group hit the ground." Ans., Ex. 3 at 7.

A review of the bullet pattern evidence is in order here:

> Police inspectors recovered 12 bullet casings at the York Street shooting scene, five from a .25 caliber automatic weapon and seven from a nine millimeter weapon. A white car parked in front of 1161/1163 York Street had six bullet holes; the garage door of 1161/1163 York Street and the house next door also had bullet holes. The inspectors opined that the white car was struck by bullets from the nine millimeter gun and that the shooter stood in the street near the driver's side of the white car. They also opined that the shooters were in the midpoint of the street, approximately 15 feet from the curb, during the shooting.
>
> Leticia died from a single bullet wound to the forehead. The bullet recovered from her body was deformed, indicating it had ricocheted off a hard object, like a car or concrete, before hitting her. It was likely a nine millimeter bullet. Robert and his other companions were not injured.

Ans., Ex. 3 at 3.

A reviewing federal court analyzes a state prisoner's allegations of insufficient evidence under Jackson v. Virginia, 443 U.S. 307 (1979). Under Jackson, the federal court "determines only whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Only if no rational trier of fact could have found

4

United States District Court
For the Northern District of California

1  proof of guilt beyond a reasonable doubt may the writ be granted. Id. at 324.

2        A reviewing federal court should take into consideration all of the evidence presented
3  at trial. LaMere v. Slaughter, 458 F.3d 878, 882 (9th Cir. 2006). If confronted by a record
4  that supports conflicting inferences, a federal habeas court "must presume — even if it does
5  not affirmatively appear on the record — that the trier of fact resolved any such conflicts in
6  favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326.

7        Under California law, a person commits attempted murder when he (1) makes a direct
8  but ineffective act toward killing another person, and (2) has the specific intent to kill that
9  person. People v. Guerra, 40 Cal.3d 377, 386 (Cal. 1985). As to the question of specific
10 intent, "[s]omeone who intends to kill only one person and attempts unsuccessfully to do so,
11 is guilty of the attempted murder of the intended victim, but not of others." People v. Bland,
12 28 Cal.4th 313, 328 (2002). There is, in sum, no transferred intent for attempted murder.

13       However, California cases recognize a "kill zone" theory of liability from which a
14 jury can infer that a criminal defendant had an "intent to kill others [in the kill zone]
15 concurrent with the intent to kill the primary victim." Id. at 330. "The intent is concurrent . . .
16 . when the nature and scope of the attack, while directed at a primary victim, are such that we
17 can conclude the perpetrator intended to ensure harm to the primary victim by harming
18 everyone in that victim's vicinity." Id. (internal citations and quotation marks removed).

19       Applying these legal principles to the instant matter, the court concludes that
20 Salcedo's claim is without merit. Specifically, evidence was presented at trial from which a
21 rational trier of fact could find Salcedo guilty of attempted murder based on a "kill zone"
22 theory of criminal liability. As the bullet pattern evidence indicates, Salcedo and the driver
23 fired many shots directly at the 1161/1163 York Street location where the group was
24 standing, rather than just at the narrower target of Robert alone, who was closer to the
25 burgundy Honda than the others, having approached it before the shots were fired. Evidence
26 at trial indicates that Salcedo and his companion remained in fixed positions while firing, and
27 were therefore in a position to aim steadily at a narrower target rather than, as they did, fire at
28

1 general location of the group.  The evidence also indicates that Salcedo continued to fire at
2 the group from the same location rather than approach Robert.  On this record, the court
3 cannot say that no rational trier of fact, presented with this evidence, could have found
4 Salcedo guilty of attempted murder beyond a reasonable doubt on a "kill zone" theory of
5 liability.  Accordingly, the court concludes that the state court's adjudication of Salcedo's
6 claim did not result in a decision that was contrary to, or involved an unreasonable
7 application of, clearly established federal law, nor did it result in a decision that was based on
8 an unreasonable determination of the facts.  Therefore, Salcedo is not entitled to habeas relief
9 on this claim.

## II.   Jury Instruction

Salcedo claims that the use of CALJIC No. 8.66.1 was erroneous and violated his right to due process. Pet., P. & A. at 19–20.  More specifically, Salcedo contends that CALJIC No. 8.66.1's use of "harm," rather than "kill," lowered the prosecution's burden of proof beneath a beyond a reasonable doubt standard.  (Id. at 21–23.)

CALJIC No. 8.66.1, as given by the trial court, reads:

> A person who primarily intends to kill one person, may also concurrently intend to kill other persons within a particular zone of risk.  The intent is concurrent when the nature and scope of the attack, while directed at a primary victim, are such that it is reasonable to infer the perpetrator intended to ensure <u>harm</u> to the primary victim by <u>harming</u> everyone in that victim's vicinity.
>
> Whether a perpetrator actually intended to kill the victim, either as a primary target or as someone within a [] zone of risk is an issue to be decided by you.

Ans., CT, Vol. 2 at 435 (emphases added).[2]

The state appellate court offered three reasons to support its conclusion that though the instruction was "ambiguous," "there is no reasonable likelihood that the jury was misled by the use of 'harm' and 'harming' in CALJIC 8.66.1 to believe it could find [Salcedo] guilty of attempted murder without finding he intended to kill." Ans., Ex. 3 at 9, 11.  First, the "overall thrust of the instruction relates to [Salcedo's] intent to kill, not his intent to harm," as the appearance of "intends to kill" at the beginning of the instruction and "actually

intended to kill" at the end indicate.  Second, "the jury was instructed that, to prove [Salcedo] guilty of the four attempted murder charges, the People had to prove that [Salcedo] harbored 'a specific intent to kill unlawfully another human being,' as well as being instructed to consider the instructions as a whole and each in light of all the others."  Third, "the prosecutor and defense counsel both emphasized the requisite element of intent to kill." Ans., Ex. 3 at 9–10.

    To obtain federal collateral relief for errors in the jury charge, petitioner must show that the ailing instructions by themselves so infected the entire trial that the resulting conviction violates due process.  See Estelle v. McGuire, 502 U.S. 62, 71–72 (1991).  The challenged instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  See id. at 72.  In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process.  United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)).

Applying these legal principles to the instant matter, the court concludes that the state appellate court's conclusion is constitutionally sound, and, therefore, that Salcedo's claim is without merit.  First, CALJIC 8.66.1 is bookended with language regarding the intent to kill, rather than intent to harm, language which not only directs the jury toward their proper task, but lessens the possibly misleading effect created by the middling appearance of "harm" and "harming."  Second, as the case law above indicates, jury instructions must be looked at as a whole, and in light of the entire trial record, as the state appellate court concluded.  Under this analysis, it is reasonable to conclude that whatever possible ambiguity "harm" may have created was dispelled by the facts that Salcedo faced charges of attempted murder, that the evidence presented at trial related directly and unambiguously to the issue of Salcedo's intent to kill, and that the overall instructions, which this court must assume the jury followed, related to an evaluation of the evidence as it related to the charges of attempted murder, and, concomitantly, Salcedo's intent to kill.  In sum, there is no evidence that the instruction by

itself, even if ailing, so infected the proceedings that Salcedo was deprived of a fundamentally fair trial or that it lowered the prosecution's burden to prove its case beyond a reasonable doubt.[3]  Accordingly, the court concludes that the state court's adjudication of Salcedo's claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts.  Therefore, Salcedo is not entitled to habeas relief on this claim.

## CONCLUSION

The court concludes that the state court's adjudication of the claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts.  Accordingly, the petition for writ of habeas corpus is DENIED.

The clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: May 4, 2009

_____
MARILYN HALL PATEL
United States District Judge

# NOTES

1. Salcedo was also convicted of discharging a firearm at an inhabited dwelling (Cal. Pen. Code § 246), and possession of a firearm by a felon (id. § 12021(a)).  The jury also found true allegations that Salcedo intentionally and personally discharged a firearm and proximately caused great bodily injury during the commission of these offenses (id. §§ 12022.53(c) & (d)).  In a bifurcated proceeding, the trial court found true an allegation that Salcedo had a prior felony conviction for which he had served a prison term (id. § 667.5(b)).  Ans., Ex. 3 at 1 n.2.

2. In 2004, "harm" and "harming" in CALJIC 8.66.1 were changed to "kill" and "killing," in light of People v. Bland, 28 Cal.4th 313 (2002).

3. As part of his claim, Salcedo contends that the lengthy jury deliberations "reflect[] an extremely close case in which any error in the jury instructions [such as in CALJIC No. 8.66.1] could easily have improperly tipped the balance against [Salcedo] in favor of conviction."  Pet., P. & A. at 27.  The state appellate court found Salcedo's claim to be "at best, speculative."  This court cannot say that the state appellate court's ruling was in error.  In fact, Salcedo has not even shown that this was a close case, or that the jury deliberations were unduly lengthy.  The trial, which lasted seven weeks, had two defendants, each facing eight counts and nineteen special allegations.  According to the state appellate court, the jury deliberated for four days on one attempted murder charge, and five days on the other three.  On this record, which indicates nine days of deliberation over four very serious charges after a seven week trial, this court cannot say that the state appellate court's adjudication of this claim was constitutionally erroneous.